DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| J&G Investments, LLC, et al., ) | |
| ) | CASE NO. 5:06 CV 2461 |
| Plaintiff(s), ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER (including Preliminary |
| Fineline Properties, Inc., et al., ) | Injunction) |
| ) | |
| Defendant(s). ) | (Resolving Doc. Nos. 10, 51) |
| ) | |
| ) | |

Before the Court is plaintiffs' motion for preliminary injunction. See Doc. No. 10, 11. For the reasons discussed below, the motion is granted.

**I. PROCEDURAL BACKGROUND**

On October 12, 2006, plaintiffs J&G Investments, LLC ("J&G") and Daniel Hodges filed a complaint against defendants Fineline Properties, Inc., Fineline Holdings, Inc. f/k/a Fineline Properties.com, Inc. (collectively "Fineline"), Robert Petry, Robert Brauning, Sidney Rudick, Pacific Stock Transfer Company ("PSTC"), and Routh Stock Transfer, Inc. ("Routh"). (Doc. No. 1).[1] On October 18, 2006, on this Court's Order, plaintiffs filed an amended complaint.

---

[1] The complaint and the amended complaint both contained several exhibits. Exhibit L was an affidavit of Kenneth Eade, an attorney who had represented Hodges. Because the attachments to this affidavit were all missing, the Court directed that plaintiffs re-file this exhibit. They did so, see Doc. No. 65, and the Court has also considered this affidavit.

(5:06 CV 2461)

(Doc. No. 9).[2]  At the same time, plaintiffs moved for a preliminary injunction.  (Doc. Nos. 10-11).  The Court conducted a hearing on November 6, 2006.  A transcript of the hearing has been filed.  (Doc. No. 54).  At the close of the hearing, the Court directed to parties to file any supplemental briefs and they have done so.  (Doc. Nos. 57, 61).[3]  In addition, deposition transcripts (Doc. Nos. 48, 49) and an affidavit (Doc. No. 43)[4] have been filed.[5]

## II.  FACTUAL ALLEGATIONS

On or about November 12, 2004, J&G and Fineline entered into a Consulting Agreement ("the Agreement") whereby J&G agreed to assist Fineline in becoming current with its SEC reports in exchange for Fineline issuing 200,000 shares of its Preferred B Stock to J&G's executive officer, plaintiff Daniel Hodges.  (Verified Amended Complaint ["Am. Compl."] ¶ 12; Answer ¶ 12).  J&G claims that it fully performed (Am. Compl. ¶ 14); Fineline denies full performance (Answer ¶ 14).

---

[2] The Answer of Fineline, Petry and Brauning, along with a counterclaim against the plaintiffs, is Doc. No. 50.  This is the Answer that is cited throughout this Memorandum Opinion and Order.
   The Answer of PSTC is Doc. No. 56; this document also states a crossclaim against Fineline.  Routh is in default.  See Doc. No. 68.

[3] The Fineline defendants never filed any response in opposition to the motion for preliminary injunction.  The supplement which they filed post-hearing is virtually a waste of paper, since it consists of three short paragraphs that simply declare, without argument or significant authority, that plaintiffs should not be granted an injunction.  See Doc. No. 61.

[4] There has also been a motion filed to strike Doc. No. 43.  See Doc. No. 51.  This motion appears unopposed; however, since the Court did not rely on the Reskin Affidavit in deciding the motion for preliminary injunction, it sees no need to strike it from the record.  Therefore, the motion to strike is denied without prejudice to renewal if that ever becomes appropriate.

[5] This is in addition to the Eade Affidavit (Doc. No. 65) already mentioned.

(5:06 CV 2461)

On December 27, 2004, under the signature of defendant Petry, Fineline instructed PSTC to issue one certificate for 200,000 Convertible B Preferred Shares to Hodges.  (Am. Compl. ¶ 15 and Exh. C).  Fineline does not deny taking this action but it states that it did so "in anticipation of J&G fully performing" under the Agreement.  (Answer ¶ 15).

In February 2005, Hodges elected to convert his Preferred B Stock to common stock.  (Am. Compl. ¶ 16; Answer ¶ 16).  On or about February 13, 2005, PSTC issued a certificate to Hodges for 2,000,000 shares of Fineline's common stock ("the Stock").  The stock certificate was signed by Petry, as president of Fineline, and by Brauning, as secretary.  (Am. Compl. ¶ 17 and Exh. D).  Fineline asserts again that this was done "in anticipation of J&G performing" under the Agreement.  (Answer ¶ 17).  Hodges deposited the Stock with his broker for registration of the transfer.  (Am. Compl. ¶ 18).  He asserts that, absent this registration, the shares are not liquid.

By correspondence dated April 12, 2005, Petry informed Hodges that Fineline would have to issue him a 1099 tax form in the amount of $2,160,000.00 for the Stock.  Petry stated that the amount was calculated on the following basis: "[t]he day the stock was issued the bid price was $0.42 and the asking price was $1.75.  The average price is $1.08."  The 1099 form was calculated based on the average price.  (Am. Compl. ¶ 20; Answer ¶ 20).

Despite the April 12 correspondence, on April 11, 2005, Fineline had already placed an administrative stop transfer order on the Stock.  At the time, its stock was trading at $0.50 per share.  (Am. Compl. ¶ 21).  Even though this stop transfer should have expired under the UCC after 30 days, Hodges continued to be unable to effect the transfer.  Then, on or about July 5,

(5:06 CV 2461)

2006, Fineline placed a second stop transfer order on the Stock.  (Am. Compl. ¶ 22; Answer ¶ 22).

On July 25, 2006, Fineline and its Directors, Petry, Brauning and Rudick, executed a Statement of Majority Consent of the Board of Directors purporting to declare that Hodges elected to convert his Preferred B Stock to common stock on that same date.  The Statement further declared that Hodges was to receive only 2000 shares of common stock "in lieu of any other shares due or claimed to be due."  (Am. Compl. ¶ 24 and Exh. F).  Defendants do not deny issuing this Statement; however, they do deny that it was signed by Rudick.  (Answer ¶ 24).  Plaintiffs characterize this Statement as an ineffective retroactive reverse split (see, e.g., Am. Compl. ¶¶ 25, 27, 28), which defendants deny (Answer ¶¶ 25, 27, 28).

A letter dated July 25, 2006 from Jodi Godfrey in the Transfer Department of PSTC to Robyn Petersen at Legent Clearing LLC, indicated that the stock certificate had been presented for transfer on July 5, 2006 and further stated:

> 3. PSTC will withhold registration of transfer for 30 days, i.e., August 4, 2006 for Fineline Holdings, Inc. in order to provide the company an opportunity to obtain legal process or an open penalty indemnity bond.
>
> If the company fails to obtain a court order or post an indemnity bond by August 4, 2006, we will complete the registration and transfer the shares of Fineline Holdings, Inc.

(Am. Compl. ¶ 22 and Exh. E; Answer ¶ 22).  Fineline never obtained a court order and never posted an indemnity bond within 30 days.  (Am. Compl. ¶ 29; Answer ¶ 29).

In a letter dated August 16, 2006, Attorney Kenneth Eade, counsel for Hodges, wrote to Dennis Brovarone, counsel for PSTC, as follows:

4

(5:06 CV 2461)

> This will confirm that you represent Pacific Stock Transfer and the statement from your office today that no temporary restraining order has been issued on the above-referenced certificate; that it will be presented as a routine item for 2 million shares to Pacific Stock Transfer, and, if properly presented for transfer, it will be transferred within two business days.  Further, it will confirm that Fineline's attempt to issue a reverse split retroactively against these shares and claim that they are two thousand rather than two million is ineffective, in that the certificate has already been issued and is outstanding.

(Am. Compl. ¶ 30 and Exh. G).  On August 22, 2006, after Hodges informed Eade that PSTC was still refusing to transfer his certificate, claiming that it should have been for 20,000 shares, Eade wrote to PSTC to inform them that their own attorney had confirmed that it was still 2,000,000 shares.  (Eade Aff., Doc. No. 65, ¶ 9 and Exh. 6).  Brovarone confirmed by email dated August 25, 2006 that "[a]s far as [PSTC] is concerned the Hodges certificate represents 2,000,000 shares and only a court order will change that."  (Am. Compl. ¶ 33 and Exh. J).

Sometime between August 25, 2006 and August 31, 2006, Fineline changed transfer agents from PSTC to Routh.  (Am. Compl. ¶ 34 and Exh. K).  Plaintiffs assert that this was "a deliberate action by Fineline to hinder the transfer of the Stock.  (Am. Compl. ¶ 35).  Defendants deny this.  (Answer, ¶ 35).

On September 6, 2006, Eade addressed the following correspondence to Jason Freeman at Routh Stock Transfer:

> The undersigned represents Daniel Hodges, the owner of the above referenced certificate [Fineline certificate no. 2504 for 2 million shares].  Mr. Hodges has been trying to transfer this certificate to street name for the past six months, and Fineline has made every illegal attempt that it could to block the transfer.  The latest attempt is by changing transfer agents and requesting a new stop transfer be put on the certificate.
>
> Fineline already placed a stop transfer on the certificate with Pacific Stock Transfer Co, [sic] and failed to deliver a court order prior to the expiration of the

5

(5:06 CV 2461)

> 30 day period. According to the UCC, they cannot do this again. If your company allows them to delay transfer of the certificate, you will be aiding and abetting them. You have a duty under the UCC to transfer the certificate immediately. You will see from the correspondence from Fineline's attorney, Dennis Broverone [sic], barring a court order, a meteor hitting the transfer agent's office is the only thing that can prevent the transfer of the certificate from transfer, for 2 million shares. I have attached all the correspondence showing the history of Fineline's illegal attempts to cancel these shares without benefit of court order.
>
> Please govern yourselves accordingly[.]

(Am. Compl. ¶ 36; Eade Aff. ¶ 11 and Exh. 8). On or about September 19, 2006, Routh informed Eade that it intended to follow Fineline's instructions to not transfer the certificate. (Am. Compl. ¶ 37; Eade Aff. ¶ 12 and Exh. 9).

As of October 3, 2006, Fineline's shares were trading at $0.17 per share. (Am. Compl. ¶ 38; Answer ¶ 38).

Plaintiffs argue that, in light of the Stock's value decreasing rapidly and exponentially, Hodges is entitled to issuance of a preliminary and permanent injunction prohibiting defendants from obstructing the origination of a transfer instruction and to specific enforcement of the transfer of the Stock in the amount of $2,160,000.00, representing the value of such shares on the date that defendants unlawfully denied Hodges' transfer request. (Am. Compl. ¶ 39). Defendants assert that plaintiffs have failed to provide the consideration required by the Agreement and, therefore, are not entitled to injunctive relief. (Answer, ¶ 39).

(5:06 CV 2461)

### III.  DISCUSSION

**A.  Legal Standard**

Under applicable Sixth Circuit precedent, a court must consider four factors in determining whether it should grant an injunction:

> (l) whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;
>
> (2) whether the plaintiffs have shown irreparable injury;
>
> (3) whether the issuance of a preliminary injunction would cause substantial harm to others;
>
> (4) whether the public interest would be served by issuing a preliminary injunction.

Mason County Medical Association v. Knebel, 563 F.2d 256, 261 (6th Cir. 1977).  The Court may not weigh mechanically the four factors set out in Mason County.  No single factor is determinative, and the Court should weigh each of the factors in light of the factual circumstances of the case.  See Roth v. Bank of the Commonwealth, 583 F.2d 527, 537-38 (6th Cir. 1978), cert. dismissed, 442 U.S. 925 (1979).

In Roth, the Sixth Circuit held that where a plaintiff makes a strong showing of irreparable harm, the injunction may issue on a lesser showing of a likelihood of prevailing on the merits.  Id.  In a case involving great irreparable harm, then, an injunction could issue on a showing that the plaintiff has raised questions that are "fair ground for litigation."  Id. at 537; see Brandeis Machinery & Supply Corp. v. Barber-Greene Company, 503 F.2d 503, 505 (6th Cir. 1974).  It follows that the showing of a strong likelihood of prevailing on the merits will enable a court to issue an injunction despite a lesser showing of irreparable harm.  See Roth, 583 F.2d at

7

(5:06 CV 2461)

537-38 (quoting Metropolitan Detroit Plumbing & Mechanical Contractors Ass'n v. HEW, 418 F. Supp. 585, 586 (E.D. Mich. 1976)).  See also Frisch's Restaurant, Inc. v. Shoney's, Inc., 759 F.2d 1261 (6th Cir. 1985); In re DeLorean Motor Co., 755 F.2d 1223 (6th Cir. 1985); Van Drivers Union Local No. 392 v. Neal Moving & Storage, 551 F. Supp. 429 (N.D. Ohio 1982).

**B.  Application**

In this case, the underlying question is whether plaintiffs performed under the Agreement.  Performance constitutes the consideration for the issuance of the 2 million shares of stock.  This is a factual issue that must be determined before any judgment can be made as to plaintiffs' likelihood of success on the merits.  The Court does note that Fineline issued the stock certificate to Hodges; that is strong evidence that Hodges was entitled to receive it, notwithstanding Fineline's current self-serving position in its Answer that it issued the certificate only "in anticipation" of plaintiffs' performance under the Agreement.  In the business world, that is either simply not so or very bad judgment.  For purposes of the current motion, it is simply not credible.

Plaintiffs argue that, because the value of the Stock is rapidly decreasing, Hodges will be irreparably harmed by failure to issue an immediate injunction.  On the other hand, if plaintiffs prevail on the merits, it will not be particularly difficult to determine the value of the Stock at the time that defendants' wrong-doing occurred and to award that amount in damages.  The only danger (which may be a very real danger) is that, at the time of any such judgment, defendants may not be collectable.  At the hearing on the motion, when the Court inquired of counsel for the

8

(5:06 CV 2461)

defendants whether their clients were collectible, counsel side-stepped the issue by answering: "Possibly."  (TR at 17).  Counsel then rather lamely argued that, at the very least, damages can be quantified.  (Id.).  The mere ability to "quantify" damages will be little comfort to the plaintiffs if, at such time that they prevail, defendants are insolvent.  That would be a hollow victory.

Plaintiffs argue that no harm would come to any third party if an injunction were issued and that, in fact, the public interest would be served.  The Court concludes that is probably true.  Further, since the defendants have filed a counterclaim against the plaintiffs, if plaintiffs are granted an injunction and later do not prevail on the merits of their case and/or are also found liable on the merits of the counterclaim, plaintiffs would then have to pay back in damages whatever they had gained by way of the preliminary injunction.  In that event, if plaintiffs were not solvent, then defendants would suffer harm.  Of course, harm to the defendants is not one of the four factors to consider, since defendants are not properly considered "third parties."

## IV.  CONCLUSION

In light of the above, the Court is of the view that the analysis weighs in the plaintiffs' favor.  Therefore, the motion of preliminary injunction (Doc. No. 10) is granted.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that all defendants are hereby enjoined from taking any action to delay, block, inhibit or otherwise prevent the registration of the transfer of the 2,000,000 certificated shares of common stock of Fineline Holdings, Inc. belonging to Daniel Hodges; that defendant Routh Stock Transfer, Inc. is hereby ordered to immediately and without any delay register the transfer of said stock to Daniel

(5:06 CV 2461)

Hodges; and that all defendants are ordered to fully cooperate with defendant Routh Stock Transfer, Inc. and Daniel Hodges in effecting the registration of the transfer of said stock to Daniel Hodges without undue delay.

IT IS FURTHER ORDERED that by 12:00 Noon on Tuesday, December 12, 2006, defendants shall file in writing an affidavit showing that the registration of the transfer has occurred.

IT IS SO ORDERED.


| December 7, 2006 | */s/ David D. Dowd, Jr.* |
|---|---|
| Date | David D. Dowd, Jr. |
|  | U.S. District Judge |