DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

J&G Investments, LLC, et al.,              )
                                           )    CASE NO. 5:06 CV 2461
              Plaintiff(s),                )
                                           )
     v.                                    )    MEMORANDUM OPINION
                                           )    AND ORDER
Fineline Properties, Inc., et al.,         )
                                           )
              Defendant(s).                )
                                           )


     Before the Court are (1) the motion to dismiss of defendant Pacific Stock Transfer

Company (Doc. No. 86); (2) the motion to dismiss of defendant Dennis Brovarone (Doc. No.

113); (3) the motion for clarification of defendant Pacific Stock Transfer Company (Doc. No.

105); and (4) the motion for protective order and for attorney fees and costs of defendant Routh

Stock Transfer, Inc. (Doc. No. 143).[1]

     For the reasons set forth below Doc. No. 86 is denied; Doc. No. 113 is granted; and Doc.

Nos. 105 and 143 are denied as moot.

## I.  PROCEDURAL BACKGROUND

     On October 12, 2006, plaintiffs' J&G Investments, LLC ("J&G") and Daniel Hodges

("Hodges") filed their Complaint against Fineline Properties, Inc. ("Fineline"); Fineline

Holdings, Inc. f/k/a Fineline Properties.com, Inc. ("Fineline Holdings"); Robert Petry ("Petry");

---

[1]  Defendant Jodi Godfrey was only recently served and her motion to dismiss (Doc. No. 147) is not yet at issue.

(5:06 CV 2461)

Robert Brauning ("Brauning"); Sidney Rudick ("Rudick"); Pacific Stock Transfer Company

("PSTC"); and Routh Stock Transfer, Inc. ("Routh").  (Doc. No. 1).

On October 13, 2006, this Court directed the plaintiffs to file an amended complaint that

would set out each claim in a separate count; the Court also directed that, if plaintiffs intended to

pursue the injunctive relief sought in Count I, they would have to file and serve a properly

supported motion for preliminary injunction.  The Amended Complaint was filed on October 18,

2006 (Doc. No. 9), along with a motion for preliminary injunction (Doc. No. 10).[2]

On December 11, 2006, plaintiffs filed their Second Amended Complaint (Doc. No. 74).

This pleading added the following defendants: Dennis Brovarone ("Brovarone"); Jason Freeman

("Freeman"); Jodi Godfrey ("Godfrey"); and James Reskin ("Reskin").[3]

Various defendants have filed Answers, Cross-claims and/or Counterclaims and/or

Motions to Dismiss with respect to the Second Amended Complaint.  Although defendant

Rudick was served with process pursuant to an alias summons issued by certified mail from the

Clerk (see Doc. Nos. 42, 62), he has made no appearance.[4]

---

[2]  There were proceedings, including expedited discovery, relating to the motion for preliminary injunction.  Those proceedings are not reviewed here because they are not relevant to the instant ruling.  Suffice to say that the injunction was granted.  See Doc. No. 70.

[3]  The docket entry for Doc. No. 74 fails to mention Routh as a defendant; however, the actual Second Amended Complaint still includes Routh.

[4]  The return of service does not reflect a service date.  However, the return was filed on November 20, 2006; therefore, the Court can and does presume that service was effectuated no later than November 20, 2006.  If that is so, a responsive pleading would have been due on or about March 20, 2007.

(5:06 CV 2461)

## II.  DISCUSSION

### A.        The Complaint

The Second Amended Complaint (hereafter referred to as "Complaint") sets forth the

following counts:

I.        Injunctive relief under O.R.C. § 1308.30(C) -- against all defendants[5]

II.        Securities fraud under O.R.C. § 1707.41 -- against Fineline, Petry, Brauning, and Rudick[6]

III.        Aiding and abetting state law securities fraud -- against PSTC, Godfrey, Brovarone, Freeman and Reskin

IV.        Conspiracy to commit state law securities fraud -- against all defendants

V.        Violation of duty to register transfer under O.R.C. § 1308.33 -- against Routh and PSTC[7]

VI.        Violation of duty to register transfer under O.R.C. § 1308.37 [alternatively, under Delaware Code tit. 6, § 8-401] -- against Fineline and Fineline Holdings[8]

VII.        Breach of contract -- against Fineline and Fineline Holdings

---

[5] O.R.C. § 1308.30 (UCC 8-315) deals with actions against a transferee based upon wrongful transfer.  Section 1308.30(C), in particular, provides: "The right to obtain or reclaim possession of a certificated security or to compel the origination of a transfer instruction may be specifically enforced and the transfer of a certificated or uncertificated security enjoined and a certificated security impounded pending the litigation."

[6] O.R.C. § 1707.41 addresses civil liability of a seller for fraud.

[7] O.R.C.§ 1308.33 (UCC 8-115 and 8-116) addresses a security intermediary's lack of liability to an adverse claimant.

[8] O.R.C. § 1308.37 addresses the duty of an issuer to register a transfer.

3

(5:06 CV 2461)

    VIII.    Theft under O.R.C. § 2913.01 -- against Fineline, Fineline Holdings, PSTC, Routh, Petry, Brauning, and Rudick[9]

    IX.    Negligence *per se* -- against Fineline Holdings, Petry, Brauning and Rudick

    X.    Violation of 15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5 (Securities Fraud) -- against all defendants[10]

    XI.    Conspiracy to commit securities fraud -- against all defendants

    XII.    Fraud -- against all defendants

    XIII.    Conspiracy to commit fraud -- against all defendants

These counts are based upon a rather complicated set of factual allegations which can probably be boiled down to the following for purposes of the instant discussion.  Apparently, plaintiff J&G and Fineline Properties.com, Inc.[11] entered into a Consulting Agreement on November 12, 2004 whereby J&G agreed to assist Fineline in becoming current with reports it

---

[9]  O.R.C. § 2913.01 is located in Ohio's criminal code.  It is the definitions section of Chapter 2913, which deals with theft and fraud.

[10]  Title 15, Section 78j is captioned "Manipulative and Deceptive Devices."

[11]  It is a little difficult to differentiate among the various "Fineline" defendants.  Fineline Properties, Inc. is identified as "a corporation organized and existing under the laws of the State of Ohio and doing business in Ohio[,]" with its principal place of business in Kent, Ohio. (Compl. ¶ 8).  Fineline Holdings, Inc. is identified as "a publicly-traded corporation organized and existing under the laws of the State of Delaware and doing business in Ohio."  (Compl. ¶ 9). It is further identified as being formerly known as "Fineline Properties.com, Inc.," which "was a corporation organized and existing under the laws of the State of Nevada."  (Id.).  "Upon information and belief, Fineline Properties.com, Inc. merged into Fineline Holdings, Inc. in or about February, 2005."  (Id.).  In this opinion, it is easiest to refer to any and all of these entities as "Fineline" unless it is otherwise necessary to more particularly differentiate among them.

(5:06 CV 2461)

needed to file with the Securities and Exchange Commission ("SEC").  In return, Fineline agreed to issue 200,000 shares of its Preferred B Stock to J&G's executive officer, plaintiff Hodges.[12]

J&G claims to have fully performed under the Agreement.  On or about December 27, 2004, Fineline's president, defendant Petry, instructed Fineline's transfer agent, defendant PSTC, to issue to Hodges one certificate for 200,000 Convertible B Preferred Shares.  In February 2005, Hodges elected to convert his 200,000 shares of Preferred B Stock to 2,000,000 shares of Fineline Holdings, Inc. common stock.[13]  An appropriate stock certificate was issued by PSTC to Hodges on or about February 13, 2005, signed by both Petry, as president of Fineline Holdings, and by defendant Brauning, as secretary of Fineline Holdings.

This is the point at which relationships seem to have broken down and the facts get more complicated.  The bottom line is that, when Hodges attempted to register the transfer of his stock (which is necessary in order to make them liquid), he was allegedly thwarted by repeated administrative stop orders placed on the stock by Fineline.  (Compl. ¶¶ 31, 34).  Apparently the value of the stock also declined during the pendency of these stop orders so that, even if Hodges were to be able to sell them, their value to him would be greatly diminished.  The plaintiffs also allege that, ten days before the expiration of the second stop order, defendant Reskin advised defendants Petry and Fineline Holdings that they could "significantly reduce the value of Mr.

---

[12]  According to Fineline's Answer to the Complaint, a total of 800,000 shares were issued under the Agreement, only 200,000 of which were designated for Hodges.  (Doc. No. 129, ¶¶ 2-3).  Apparently, the remaining 600,000 shares are not at issue.

[13]  The Complaint asserts that this was a "mandatory conversion" "triggered" by the merger of Fineline Properties.com, Inc. into Fineline Holdings, Inc.  (Compl. ¶ 27).  Whether the conversion was mandatory or voluntary does not seem relevant at this time.

5

(5:06 CV 2461)

Hodges' ownership interest in Fineline Holdings through the issuance of a board resolution executing a 1 for 1,000 share reverse stock split."  (Compl. ¶ 37).  Thereafter, Reskin allegedly drafted a "Statement of Majority Consent of the Board of Directors" which Petry signed and on which Petry also allegedly forged the signature of defendant Brauning.  Plaintiffs allege that there was no meeting of the Board of Directors, no actual vote on the resolution, and no conformance to other procedural requirements to effectuate such a stock split.  (Compl. ¶¶ 38-43).

The plaintiffs further allege that Fineline switched transfer agents, from PSTC to defendant Routh, "for the purpose of perpetuating [their] illegal scheme [to] deprive Mr. Hodges of the benefits attendant to his ownership interest in the Stock."  (Compl. ¶ 48).[14]

In any event, it appears that Fineline believed it was entitled to put on the stop orders because it discovered that J&G did not perform its end of the bargain under the Consulting Agreement, with the result being that, from Fineline's perspective, there was a failure of consideration under the Agreement and, therefore, no need for Fineline to perform.  Fineline claims that it issued the stock certificates in anticipation of J&G's performance, which never materialized.

---

[14]  PSTC and Routh are both transfer agents which, at various times, provided services to Fineline.  There are several individual defendants who have various affiliations with the corporate defendants.  Petry, Brauning and Rudick are officers and/or directors affiliated with Fineline.  Reskin is Fineline's securities counsel.  Godfrey was apparently one of PSTC's officers.  Brovarone was PSTC's in-house counsel.  Freeman was one of Routh's officers.  It is not completely clear at this juncture how each of these individuals is involved in the factual scenario and why they should all be sued as individuals.

(5:06 CV 2461)

Most of the defendants have filed Answers to the Complaint, along with various

Counterclaims and Crossclaims which are too complicated to set forth in detail here.  (See Doc.

Nos. 124, 125, 125, 129).  Suffice to say that everybody is pointing a finger at everybody else.

Some of the defendants even accuse the plaintiffs of engaging in threats in order to induce the

defendants to breach agreements and break securities laws.  There is, quite simply, no love lost

and a fair amount of evident anger and hard feelings among the various players.

**B.      The Motions to Dismiss (Doc. Nos. 86 and 113)**

**1.  Standard for Motions to Dismiss**

"A court may dismiss a complaint only if it is clear that no relief could be granted under

any set of facts that could be proved consistent with the allegations."  Hishon v. King &

Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote

omitted)).  When a complaint is challenged under Fed. R. Civ. P. 12(b)(6), its allegations should

be construed favorably to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), and its

factual allegations, "construed as to do substantial justice," Fed. R. Civ. P. 8(f), must be accepted

as true.  See United States v. Gaubert, 499 U.S. 315, 327 (1991); Hishon, 467 U.S. at 73; Conley,

355 U.S. at 48.  See also Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740

(1976) ("take as true the material facts alleged").  The sufficiency of a complaint, however, is a

question of law, Dugan v. Brooks, 818 F.2d 513, 516 (6th Cir. 1987), and the court "need not

accept as true legal conclusions or unwarranted factual inferences."  Morgan v. Church's Fried

Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (citations omitted).

(5:06 CV 2461)

In general, notice pleading under the Federal Rules "do[es] not require a claimant to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is 'a short plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47 (failure of complaint to set forth specific facts to support its general allegations of discrimination was not a sufficient ground for dismissal of the suit) (footnote citing Fed. R. Civ. P. 8(a)(2)).  Except for two specific instances as provided by Fed. R. Civ. P. 9(b) for fraud and mistake, notice pleading under Fed. R. Civ. P. 8(a) does not require greater particularity.  See, e.g., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993) (greater particularity not required even where municipal liability is alleged).


**2.  The Motion of PSTC (Doc. No. 86)**

Defendant PSTC has moved, under Fed. R. Civ. P. 9(b) and 12(b)(6) and 15 U.S.C. § 78u-4, to dismiss the Complaint against it, in particular, to dismiss Counts III, IV, V, VIII, X, XI, XII and XIII.  (Doc. No. 86).  Plaintiffs have filed a brief in opposition to dismissal (Doc. No. 115) and PSTC filed a reply (Doc. No. 127).

PSTC is a securities transfer agent.  It performs the ministerial function of registering the issuance and transfer of shares of stock when presented with proper supporting documentation.  All of the counts of the Complaint which PSTC seeks to have dismissed are based on the premise

8

(5:06 CV 2461)

that PSTC did not process an alleged request by plaintiff Hodges to register a transfer of the

relevant shares of stock.[15]

In its motion, PSTC argues specifically that Count V should be dismissed because it fails

to allege a proper presentment by Hodges to PSTC and that Counts X and XI (the only federal

claims) should be dismissed because they fail to allege certain elements of a securities fraud

claim and, further, as to PSTC, they allege no more than aiding and abetting securities fraud, for

which there is no private right of action.  The motion seeks in general the dismissal of all counts

of fraud and securities fraud leveled against PSTC.  Although the arguments made are not

directed to specific counts of the Complaint, except as to Counts V, X and XI, PSTC argues

generally that the allegations of the Complaint are insufficient to meet the particularity

requirements for fraud claims.

In a lengthy and somewhat rambling brief in opposition to the motion, plaintiffs argue,

with multiple references to the Complaint, that it pleads fraud with sufficient particularity to

survive a motion to dismiss.

Frankly, the Court finds the pleadings and the motions papers to be more than a little

obtuse.  Further, the Court finds it difficult to understand how or why a transfer agent like PSTC,

which seems to be a mere clerical player with respect to any securities transactions, could or

would conspire to engage in securities fraud.  The Court fails to see what could possibly

motivate such alleged conduct on the part of a mere transfer agent.

---

[15]  In a footnote, PSTC points out that, as to PSTC, the Complaint is brought by an
individual residing in Arizona (Hodges) against a transfer agent located in Nevada (PSTC) in
connection with shares of a Delaware corporation purportedly doing business in Ohio (Fineline).

(5:06 CV 2461)

That having been said, although plaintiffs may not ultimately succeed in proving any or all of their claims against PSTC, the Court is of the view that the Complaint, although somewhat confusing, is sufficient to withstand the motion to dismiss.  Perhaps discovery and motions for summary judgment will compel a different result; however, on a motion to dismiss, the Court is not quick to assume that "no relief could be granted under any set of facts[.]"  Hishon, supra.

Accordingly, the motion of PSTC to dismiss the Second Amended Complaint (Doc. No. 86) is denied.

**3.  The Motion of Brovarone (Doc. No. 113)**

Defendant Brovarone also filed a motion under Rules 9(b) and 12(b)(6) to dismiss Counts III, IV, X, XI, XII and XIII (Doc. No. 113); plaintiffs filed a response (Doc. No. 130) and defendant filed a reply (Doc. No. 132).

Brovarone is PSTC's in-house counsel (Compl. ¶ 16) and any tasks alleged in the Complaint were performed by Brovarone in that capacity.  It is not alleged that he is an officer or director of any of the corporate entities.  Although it is generally alleged in Counts X and XI that Brovarone was a "control person" for purposes of securities fraud, there are simply no facts alleged which would tend to show that he was anything more than legal counsel for PSTC.  In that capacity, he is immune from securities fraud liability.  McCartney v. Universal Elec. Power Corp., No. 22417, 2005 WL 2020559, at * 2 (Ohio App. Aug. 24, 2005).

The Court is of the view that it need not exhaustively examine every argument for and against every Count leveled against Brovarone to conclude that he was sued simply because he

10

(5:06 CV 2461)

was in-house counsel for PSTC and plaintiffs decided to go after every individual remotely connected to the factual scenario.

Brovarone's motion to dismiss (Doc. No. 113) is granted in its entirety and Brovarone is dismissed from this action.

**C.     Defendant Routh's Motion for Protective Order (Doc. No. 143) and Defendant PSTC's Motion for Clarification (Doc. No. 105)**

Routh's motion seeks protection from the burden of having to respond to outstanding discovery requests during the pendency of the motions to dismiss, which supposedly trigger an automatic stay of discovery.  PSTC filed a motion for clarification with respect to the stay.

The Court asked the parties to brief the question of whether 15 U.S.C. § 78u-4(b)(3) actually applies in this case, which is not a class action.  The parties filed briefs in response to the Court's order.

The Court is not convinced that stays of discovery apply except in class actions which, by virtue of their broad reach, have the potential to be highly burdensome.  It makes sense to stay discovery in a class action pending resolution of motions to dismiss which might resolve the entire case.  It does not make sense in a case such as this one, where individuals are bringing securities claims.

In any event, except for the now pending motion of defendant Godfrey, which is not yet at issue and which involves only one bit player in this complicated factual scenario, the motions to dismiss have now been resolved and, had there been a stay, it would have been lifted.

Accordingly, both Doc. No. 105 and Doc. No. 143 are denied as moot.

11

(5:06 CV 2461)

### III.  SUMMARY CONCLUSION

PSTC's motion to dismiss (Doc. No. 86) is denied; Brovarone's motion to dismiss (Doc. No. 113) is granted and that defendant is dismissed entirely.  The Court will defer a ruling on Godfrey's motion to dismiss (Doc. No. 147) until it is fully briefed.

Routh's motion for protective order and attorney fees (Doc. No. 143) and PSTC's motion for clarification (Doc. No. 105) are both denied as moot.

### IV.  ADDITIONAL REMARKS

The Court believes it is necessary to make some additional remarks to guide subsequent proceedings in this case.

It is very clear from the nature of the pleadings and the motions that there is a lot of "bad blood" among the various parties.  It is the Court's experience that this typically leads to a flurry of frivolous motions because neither counsel nor the parties are willing or able to cooperate as discovery progresses and because all concerned prefer a strategy of harassment to a strategy of cooperation.  This may "work" for the parties and counsel, but it is a waste of time for the Court.

All counsel are officers of the Court as well has zealous representatives of their respective parties.  They have a responsibility to function professionally, and that may include having to rein in angry or headstrong clients during the course of discovery.  This Court will not act as a refree for needless discovery disputes.  Nor will the Court entertain "rolling" dispositive motions.

In order to assure that there will be orderly discovery and subsequent proceedings, and notwithstanding the still-pending motion of defendant Godfrey, the Court will now require

12

(5:06 CV 2461)

counsel to confer and to submit a written discovery plan by no later than April 13, 2007.  This

plan should outline all forms of anticipated discovery, including written discovery and

depositions, and shall propose a schedule for completion of the same.  The Court will expect the

proposal to include a schedule for depositions which names each deponent and sets times, dates

and places for each deposition.  The length of depositions will be governed by the Federal Rules

of Civil Procedure.  The proposal should also include a schedule for dispositive motions briefing.

The proposal may, but is not required to, include a proposed schedule for any form of

appropriate alternative dispute resolution following the completion of discovery and before

dispositive motions.  The current discovery cut-off date is May 29, 2007.  The Court is amenable

to a reasonable suggestion for an extension of that deadline, provided the proposed discovery

plan is detailed enough and further provided that all parties commit to adhere to the discovery

plan.

IT IS SO ORDERED.


  March 27, 2007                               s/ David D. Dowd, Jr.
Date                                          David D. Dowd, Jr.
                                              U.S. District Judge

13