DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| J&G Investments, LLC, et al., ) | |
| ) | CASE NO. 5:06 CV 2461 |
| Plaintiff(s), ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| Fineline Properties, Inc., et al., ) | |
| ) | (Resolving Doc. No. 147) |
| Defendant(s). ) | |
| ) | |

Before the Court is the motion to dismiss filed by defendant Jodi Godfrey (Doc. No. 147). Plaintiffs filed a response (Doc. No. 162) and Godfrey filed a reply (Doc. No. 173). For the reasons discussed herein, the motion is granted and Godfrey is dismissed from this case.

## I. BACKGROUND

This action was initiated on October 12, 2006. The Court directed plaintiffs to file an amended complaint, see Doc. No. 6, which they did on October 18, 2006 (Doc. No. 9) along with a motion for preliminary injunction (Doc. No. 10). A hearing on the motion was conducted on November 6, 2006 and the motion was granted on December 7, 2006. See Doc. No. 70.

With leave of Court, the Second Amended Complaint (Doc. No. 74) was filed on December 11, 2006. It is this complaint which underlies the current motion to dismiss. The Second Amended Complaint (hereafter "Complaint") sets forth the following thirteen claims for relief:

    I.    Injunctive relief under O.R.C. § 1308.30(C) -- against all defendants

(5:06 CV 2461)

    II.       Securities fraud under O.R.C. § 1707.41 -- against Fineline, Petry, Brauning, and Rudick

    III.     Aiding and abetting state law securities fraud -- against PSTC, Godfrey, Brovarone, Freeman and Reskin

    IV.     Conspiracy to commit state law securities fraud -- against all defendants

    V.      Violation of duty to register transfer under O.R.C. § 1308.33 -- against Routh and PSTC

    VI.     Violation of duty to register transfer under O.R.C. § 1308.37 [alternatively, under Delaware Code tit. 6, § 8-401] -- against Fineline and Fineline Holdings

    VII.    Breach of contract -- against Fineline and Fineline Holdings

    VIII.   Theft under O.R.C. § 2913.01 -- against Fineline, Fineline Holdings, PSTC, Routh, Petry, Brauning, and Rudick

    IX.     Negligence per se -- against Fineline Holdings, Petry, Brauning and Rudick

    X.      Violation of 15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5 (Securities Fraud) --against all defendants

    XI.     Conspiracy to commit securities fraud -- against all defendants

    XII.    Fraud -- against all defendants

    XIII.   Conspiracy to commit fraud -- against all defendants

The gravamen of the complaint was set forth in a previous Memorandum Opinion and Order as follows:

> These counts are based upon a rather complicated set of factual allegations which can probably be boiled down to the following for purposes of the instant discussion. Apparently, plaintiff J&G and Fineline Properties.com, Inc.[11] entered into a Consulting Agreement on November 12, 2004 whereby J&G agreed to assist Fineline in becoming current with reports it needed to file with the

(5:06 CV 2461)

Securities and Exchange Commission ("SEC").  In return, Fineline agreed to issue 200,000 shares of its Preferred B Stock to J&G's executive officer, plaintiff Hodges.[12]

> [11] It is a little difficult to differentiate among the various "Fineline" defendants. Fineline Properties, Inc. is identified as "a corporation organized and existing under the laws of the State of Ohio and doing business in Ohio[,]" with its principal place of business in Kent, Ohio. (Compl. ¶ 8).  Fineline Holdings, Inc. is identified as "a publicly-traded corporation orgainized [sic] and existing under the laws of the State of Delaware and doing business in Ohio." (Compl. ¶ 9).  It is further identified as being formerly known as "Fineline Properties.com, Inc.," which "was a corporation organized and existing under the laws of the State of Nevada." (Id.).  "Upon information and belief, Fineline Properties.com, Inc. merged into Fineline Holdings, Inc. in or about February, 2005." (Id.).  In this opinion, it is easiest to refer to any and all of these entities as "Fineline" unless it is otherwise necessary to more particularly differentiate among them.

> [12] According to Fineline's Answer to the Complaint, a total of 800,000 shares were issued under the Agreement, only 200,000 of which were designated for Hodges.  (Doc. No. 129, ¶¶ 2-3).  Apparently, the remaining 600,000 shares are not at issue.

J&G claims to have fully performed under the Agreement.  On or about December 27, 2004, Fineline's president, defendant Petry, instructed Fineline's transfer agent, defendant PSTC, to issue to Hodges one certificate for 200,000 Convertible B Preferred Shares.  In February 2005, Hodges elected to convert his 200,000 shares of Preferred B Stock to 2,000,000 shares of Fineline Holdings, Inc. common stock.[13]  An appropriate stock certificate was issued by PSTC to Hodges on or about February 13, 2005, signed by both Petry, as president of Fineline Holdings, and by defendant Brauning, as secretary of Fineline Holdings.

> [13] The Complaint asserts that this was a "mandatory conversion" "triggered" by the merger of Fineline Properties.com, Inc. into Fineline Holdings, Inc.  (Compl. ¶ 27).  Whether the conversion was mandatory or voluntary does not seem relevant at this time.

This is the point at which relationships seem to have broken down and the facts get more complicated.  The bottom line is that, when Hodges attempted to register the transfer of his stock (which is necessary in order to make them liquid), he was allegedly thwarted by repeated administrative stop orders placed on the stock by Fineline.  (Compl. ¶¶ 31, 34).  Apparently the value of the stock also declined during the pendency of these stop orders so that, even if Hodges were to be able to sell them, their value to him would be greatly diminished.  The plaintiffs also allege that, ten days before the expiration of the second stop order, defendant Reskin advised defendants Petry and Fineline Holdings that they could

3

(5:06 CV 2461)

> "significantly reduce the value of Mr. Hodges' ownership interest in Fineline Holdings through the issuance of a board resolution executing a 1 for 1,000 share reverse stock split." (Compl. ¶ 37).  Thereafter, Reskin allegedly drafted a "Statement of Majority Consent of the Board of Directors" which Petry signed and on which Petry also allegedly forged the signature of defendant Brauning. Plaintiffs allege that there was no meeting of the Board of Directors, no actual vote on the resolution, and no conformance to other procedural requirements to effectuate such a stock split.  (Compl. ¶¶ 38-43).
>
> The plaintiffs further allege that Fineline switched transfer agents, from PSTC to defendant Routh, "for the purpose of perpetuating [their] illegal scheme [to] deprive Mr. Hodges of the benefits attendant to his ownership interest in the Stock."  (Compl. ¶ 48).[14]
>
>> [14]  PSTC and Routh are both transfer agents which, at various times, provided services to Fineline.  There are several individual defendants who have various affiliations with the corporate defendants.  Petry, Brauning and Rudick are officers and/or directors affiliated with Fineline.  Reskin is Fineline's securities counsel.  Godfrey was apparently one of PSTC's officers.  Brovarone was PSTC's in-house counsel.  Freeman was one of Routh's officers.  It is not completely clear at this juncture how each of these individuals is involved in the factual scenario and why they should all be sued as individuals.
>
> In any event, it appears that Fineline believed it was entitled to put on the stop orders because it discovered that J&G did not perform its end of the bargain under the Consulting Agreement, with the result being that, from Fineline's perspective, there was a failure of consideration under the Agreement and, therefore, no need for Fineline to perform.  Fineline claims that it issued the stock certificates in anticipation of J&G's performance, which never materialized.
>
> Most of the defendants have filed Answers to the Complaint, along with various Counterclaims and Crossclaims which are too complicated to set forth in detail here.  (See Doc. Nos. 124, 125, 125, 129).  Suffice to say that everybody is pointing a finger at everybody else.  Some of the defendants even accuse the plaintiffs of engaging in threats in order to induce the defendants to breach agreements and break securities laws.  There is, quite simply, no love lost and a fair amount of evident anger and hard feelings among the various players.

Memorandum Opinion and Order, March 27, 2007, at 4-7 (footnotes in original).  (Doc. No. 149).

(5:06 CV 2461)

## II. DISCUSSION

### A. Legal Standard

Defendant Godfrey's motion to dismiss is brought under Fed. R. Civ. P. 12(b)(2) and 12(b)(6). Typically, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted)). When a complaint is challenged under Fed. R. Civ. P. 12(b)(6), its allegations should be construed favorably to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), and its factual allegations, "construed as to do substantial justice," Fed. R. Civ. P. 8(f), must be accepted as true. See United States v. Gaubert, 499 U.S. 315, 327 (1991); Hishon, 467 U.S. at 73; Conley, 355 U.S. at 48. See also Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740 (1976) ("take as true the material facts alleged").

The sufficiency of a complaint, however, is a question of law, Dugan v. Brooks, 818 F.2d 513, 516 (6th Cir. 1987), and the court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (citations omitted). In general, notice pleading under the Federal Rules "do[es] not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47 (failure of complaint to set forth specific facts to support its general allegations of discrimination was not a sufficient ground for dismissal of the suit) (footnote citing Fed. R. Civ. P. 8(a)(2)).

(5:06 CV 2461)

The two specific exceptions to Rule 8 notice pleading are instances of fraud and mistake, as provided by Fed. R. Civ. P. 9(b).  See, e.g., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).

On June 21, 2007, the Supreme Court addressed the nature of the Rule 9(b) pleading inquiry for securities fraud cases in the wake of the Private Securities Litigation Reform Act of 1995, which requires that plaintiffs state with particularity both the facts underlying the alleged violation and the facts showing scienter.  The Court "establish[ed] the following prescriptions:"

> . . . *First*, faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true.  See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). . . .
>
> *Second*, courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.  See 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007).  The inquiry, as several Courts of Appeals have recognized, is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.  See, e.g., Abrams v. Baker Hughes Inc., 292 F.3d 424, 431 (C.A.5 2002); Gompper v. VISX, Inc., 298 F.3d 893, 897 (C.A.9 2002). . . .
>
> *Third*, in determining whether the pleaded facts give rise to a "strong" inference of scienter, the court must take into account plausible opposing inferences. . . . [T]he inference of scienter must be more than merely "reasonable" or "permissible"--it must be cogent and compelling, thus strong in light of other explanations.  A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. [footnote omitted].

Tellabs, Inc. v. Makor Issues & Rights, Ltd., -- U.S. --, 2007 WL 1773208, at *9-10 (U.S. June 21, 2007).

6

(5:06 CV 2461)

On a motion to dismiss for failure to state a claim, where matters outside the pleadings are considered, the standard of review for summary judgment under Rule 56 is appropriate. Friedman v. United States, 927 F.2d 259, 261 (6th Cir. 1991) (citing Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986) (distinguishing the standards of review for Rule 12(b)(1) and 12(b)(6) motions)).

## B. The Claims Against Godfrey

The underlying general factual scenario is quoted above in detail from a prior order. Jodi Godfrey is specifically implicated in Counts X and XI, which allege a federal claim of securities fraud and conspiracy to commit federal securities fraud, and in Counts III, IV, XII and XIII, which allege, respectively, aiding and abetting state law securities fraud, conspiracy to commit state law securities fraud, common law fraud and conspiracy to commit common law fraud.[1]

### 1. The Federal Securities Claims Against Godfrey

The Court will first examine the two federal claims, Counts X and XI. In this case, since matters outside the pleadings have been presented by both sides, the Court will consider the motion to dismiss Counts X and XI as if it were a motion for summary judgment.

In Count X, the Complaint alleges that all the defendants "each separately and in concert and participation with each other" have "used or employed in connection with the purchase or

---

[1] Godfrey is also swept into Count I, a claim for injunctive relief; however, in view of the Court's ruling with respect to the other counts of the complaint, plaintiffs are not entitled to any injunctive orders against Godfrey, beyond that which was already granted by order dated December 7, 2006. See Doc. No. 70, granting preliminary injunction.

7

(5:06 CV 2461)

sale of a securities manipulative and/or deceptive devices or contrivances" (Compl. ¶ 121), have "employed a device, scheme, or artifice to defraud" (Compl. ¶ 122), have "made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made . . . not misleading" (Compl. ¶ 123), have "engaged in illegal acts, transactions, practices, and business dealings that have operated as a fraud and a deception upon the purchaser or seller of . . . securities" (Compl. ¶ 124), all in violation of federal securities laws and regulations.[2] This Count further alleges, in particular, that Godfrey "participated in the scheme at least between April 2005 and September 2006." (Compl. ¶ 126). Count X also alleges that all the defendants "conspired and schemed to deprive Mr. Hodges of the value of his ownership interest" and "destroyed the value of that property interest[.]" (Compl. ¶ 132). This count alleges that Godfrey is a "control person" and an "aider and abettor" within the meaning of the securities laws. (Compl. ¶ 139). Count XI alleges that Godfrey and the other defendants, "[b]y and through the . . . acts and omissions fully set forth in Count VIII . . . conspired to violate" securities laws and regulations." (Compl. ¶ 142).[3]

Even though the Complaint sets forth a "parade of horribles" sweeping in Godfrey, who is alleged to be an "officer" of PSTC (Compl. ¶ 15) and a "control person (Compl. ¶ 139), there is nothing in the Complaint or the briefs relating to Godfrey's motion to dismiss which would

---

[2] In particular, plaintiffs allege violation of 15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5.

[3] This Count, with its reference to Count VIII, is somewhat confusing. Count VIII alleges theft against several defendants, but not Godfrey. It sets out the factual basis for plaintiffs' claims that they have been stopped at every turn when attempting to register the transfer of stock and that this amounts to theft under Ohio law. Exactly how this forms the basis for a federal securities fraud conspiracy is unclear.

8

(5:06 CV 2461)

suggest that she was anything more than an employee who would have been following the orders of her superiors. Although there are many facts alleged in the complaint, they are not linked to Godfrey with the requisite particularity.

Godfrey has filed an affidavit wherein she asserts that she "was not an operating officer, director or shareholder of [PSTC]" but that she "held the ministerial post of assistant secretary for [PSTC], which was merely a formality and did not involve active participation in [PSTC's] operations and management." (Doc. No. 147-3, ¶ 2). Plaintiffs have made no attempt to refute the assertion that Godfrey's role was merely to perform the ministerial or clerical function of registering the issuance and transfer of shares, but only when presented with appropriate supporting documentation. Godfrey was simply not in the position to commit securities fraud.

In addition, there is nothing to suggest that Godfrey has "control person" liability. Section 20 of the Exchange Act provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce that act or acts causing the violation or cause of action.

15 U.S.C. § 78t(a).

To establish a Section 20(a) claim, plaintiffs must prove three elements:

First, [defendant] "must have committed an underlying violation of the securities laws or the rules and regulations promulgated thereunder." PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 696-697 (6th Cir. 2004). Second, [defendant] must have directly or indirectly controlled the entity liable for the securities law violation. Id. "Control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R.

9

(5:06 CV 2461)

> § 240.12b-2.  Third, and finally, because "controlling person" liability is derivative [plaintiff] may hold [defendant] liable under this theory only if [defendant] controlled an entity that violated the Exchange Act.  <u>Darby v. Century Bus. Servs. .</u>, 96 Fed. Appx. 277, 286 (6th Cir. 2004) (Exchange Act); <u>see also</u> <u>D.E. & J. Ltd. P'ship v. Conaway</u>, 133 Fed. Appx. 994, 1001 (6th Cir. 2005) (Securities Act).

<u>U.S. S.E.C. v. Smith</u>, 2005 WL 2373849, at *10 (S.D.Ohio Sept. 27, 2005), <u>aff'd</u> <u>U.S.S.E.C. v. Smith</u>, 2006 WL 3690414 (6th Cir. Dec. 14, 2006) (per curiam).

Plaintiffs simply cannot meet this test with respect to Godfrey.  There is nothing to suggest that Godfrey was a "control person" or, for that matter, that she had any decision-making or policy-making authority.

There is no basis for finding Godfrey liable for federal securities fraud or conspiracy to commit securities fraud.  Therefore, Godfrey's motion to dismiss Counts X and XI, treated as a motion for summary judgment due to consideration of matters outside the complaint, is granted.

**2.  The State Law Claims Against Godfrey**

In addition to the federal claims, the Complaint alleges in Count III that Godfrey aided and abetted state law securities fraud when she "gave substantial assistance or encouragement" to the other defendants in order to commit state law securities fraud.  (Compl. ¶ 79).  There is no delineation of detail with respect to what that "substantial assistance" was.  In Count IV, the Complaint alleges that, "[b]y and through the . . . acts and omissions fully set forth in Count II[,]"[4]  all of the defendants "conspired to violate Ohio Revised Code § 1707.41[ ]" (Compl. ¶

---

[4] The "acts and omissions" set forth in Count II include:

¶ 64 -- Fineline's offer of "an ownership interest in Fineline for sale to J&G for the
(continued...)

10

(5:06 CV 2461)

82) and plaintiffs "relied on PSTC, Ms. Godfrey and Mr. Bravarone to limit any administrative stop order on the Stock to the thirty (30) days between April 11, 2006 and May 10, 2006 absent a court order or indemnity bond pursuant to applicable law." (Compl. ¶ 84). Count XII alleges common law fraud. In particular, it alleges that Godfrey and other defendants "made false representations regarding limiting any administrative stop order on the Stock to thirty (30) days between April 11, 2006 and May 10, 2006 absent a court order or indemnity bond pursuant to applicable law[ ]" (Compl. ¶ 145) and that they did so with "knowledge of the falsity of the representations" (Compl. ¶ 146) and "intend[ing] to induce reliance on the misrepresentations" (Compl. ¶ 147). Finally, in Count XIII, the Complaint alleges that Godfrey and the others, "[b]y and through the . . . acts and omissions fully set forth in Count XII . . . conspired to commit fraud." (Compl. ¶ 151).

---

[4] (...continued)
   benefit of Mr. Hodges."

¶ 68 --  Fineline's "affirmative[ ] represent[ation]" that "the issuance of shares was 'free and clear of any legends or restrictions';" that "the Company was required to 'issue instructions to its transfer agent to issue the certificates free and clear of any legend, restriction or stop order, and deliver the shares so registered';" and that "the shares of common stock, upon their conversion, 'shall be freely transferable on the company's books and records of the Company.'"

¶ 69 --  Fineline's failure to disclose "any adverse risk, condition, or restriction on transfer[ ]" or any "potential for a reduction in the amount of shares of Stock, or other events that potentially could have reduced the value of the Stock."

¶ 71 --  Fineline's failure to disclose "any restriction or risk associated with the register or transfer of Stock."

(5:06 CV 2461)

      Godfrey asserts that this Court lacks personal jurisdiction over her with respect to these state law claims because she has no contacts with the State of Ohio.  Fourteenth Amendment due process requirements are met when *in personam* jurisdiction is asserted over a nonresident defendant that has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940).

      Plaintiffs bear the burden of showing that the court has personal jurisdiction over Godfrey.  Brunner v. Hampson, 441 F.3d 457, 462 (6th Cir.2006) (citing CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1261-62 (6th Cir. 1996)).  "When, however, a district court rules on a jurisdictional motion to dismiss ... without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff.... To defeat such a motion, ... [the plaintiff] need only make a *prima facie* showing of jurisdiction." CompuServe, Inc., 89 F.3d at 1262.

      The Court did not conduct an evidentiary hearing and none has been requested.  However, the undisputed facts set forth in Godfrey's affidavit[5] establish that Godfrey is not subject to this Court's jurisdiction because she does not have the requisite continuous and

---

[5] The affidavit is considered a "matter outside the pleadings" for purposes of the two federal claims, which the motion challenges on the merits, converting the motion to dismiss as to those two counts into a motion for summary judgment.  The affidavit does not have the same effect with respect to the state law claims, which are challenged on the basis of lack of personal jurisdiction.  It is permissible for Godfrey to submit her affidavit to support her claim that there is no personal jurisdiction.

12

(5:06 CV 2461)

systematic contacts with this state.  See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414, n.9 (1984).  For that matter, she has no contacts with this state.  Godfrey resides and works in Nevada, is registered to vote in Nevada, and has a Nevada drivers license.  Her employer, PSTC, is not incorporated in Ohio and maintains no place of business in Ohio.  Godfrey pays no taxes in Ohio, neither leases nor owns property in Ohio, has no accounts of any kind in Ohio, and no address in Ohio.  Plaintiffs assertion that she made telephone contact with other defendants in Ohio, even if true, is insufficient to establish the kind of contact necessary to establish *in personam* jurisdiction.  Kerry Steel, Inc. v. Paragon Industries, Inc., 106 F.3d 147, 150 (6th Cir. 1997) ("[A] defendant will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts.").[6]

Accordingly, Godfrey's motion to dismiss Counts III, IV, XII and XIII for lack of personal jurisdiction is granted.

---

[6] Plaintiffs argue, interestingly, that Godfrey's "activities in relation to the claims asserted against her in this litigation are sufficient contacts with Ohio such that she can be **hauled into** this Court." (Doc. No. 162, at 1).  This probably expresses more accurately precisely what plaintiffs have tried to do vis-a-vis Godfrey -- haul her into court in a forum where she has no contacts whatsoever.

13

(5:06 CV 2461)

### III.  CONCLUSION

For the reasons set forth above, defendant Jodi Godfrey's motion to dismiss (Doc. No. 147) is granted and Jodi Godfrey is dismissed from this case.

IT IS SO ORDERED.


|  July 16, 2007 |   *s/ David D. Dowd, Jr.* |
|---|---|
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |